Argued and submitted March 6, decision of Court of Appeals reversed; judgment of circuit court vacated, and case remanded to circuit court for further proceedings December 18, 1997

In the Matter of the Relationship of

Douglas HENRY,
*Petitioner on Review,*

*and*

Sharon KEPPEL,
nka Sharon Keppel Allen,
*Respondent on Review.*

(CC 93-DR-1084; CA A89111; SC S43648)

951 P2d 135

Steven M. Richkind, Sandy, argued the cause and filed the petition for petitioner on review.

Clayton C. Patrick, of Patrick & Meadowbrook, Salem, argued the cause and filed the briefs for respondent on review.

William M. Hilton, Santa Clara, California, argued the cause and filed an *amicus curiae* brief *in propria persona*.

GRABER, J.

**GRABER, J.**

The issue before us in this interstate custody dispute is whether the federal Parental Kidnaping Prevention Act (PKPA), 28 USC § 1738A (1994), and the Uniform Child Custody Jurisdiction Act (UCCJA), ORS 109.700 to 109.930, allow Oregon to modify a particular California custody decree. The trial court modified the decree, and the Court of Appeals affirmed. *Henry and Keppel,* 143 Or App 203, 205, 922 P2d 712 (1996). We reverse the decision of the Court of Appeals and remand the case to the trial court for further proceedings.

The Court of Appeals reviewed the facts in this case *de novo,* pursuant to ORS 19.125(3). *Ibid.* As permitted by ORS 19.125(4), we limit our review to questions of law and take the following facts from the findings of the Court of Appeals.

"Mother and father, who never married, began living together in California in the spring of 1983. Their daughter was born in July 1984. After the parties separated in July 1985, mother moved with the child to Oregon, where they have resided ever since. In December 1985, father began a proceeding in California to establish paternity and joint custody. Mother sought sole custody. In October 1987, the California court ordered joint legal custody, with physical custody awarded to mother. Father was granted visitation, including all but three weeks of summer vacation, spring break, and half of the Christmas holidays. Father exercises those visitation rights in California and, two to four times a year, he spends four days with his daughter, either in California or in Oregon.

"In June 1988, father filed an action in Jackson County to enforce the California order against mother. Mother was never served. Five years later, mother moved to change the venue of father's enforcement action to Josephine County. Over father's objection, her motion was granted. In March 1994, mother obtained an order to show cause in Josephine County, seeking sole custody and limiting father's visitation. Father moved to dismiss the modification proceeding for lack of jurisdiction. The court denied father's motion, as

well as his later motion for reconsideration. The court modified the California decree to award mother sole legal custody and to modify father's visitation." *Ibid.* (footnote omitted).

Father appealed the trial court's judgment, arguing that the court erred in modifying the decree because, under the PKPA and the UCCJA, California courts have continuing jurisdiction over this matter. Mother argued that California does not have continuing jurisdiction in the circumstances and that an Oregon court can modify the decree. The Court of Appeals affirmed, holding that there is not "substantial evidence" on the custody matter in California and, therefore, that Oregon can modify the decree. *Id.* at 208-09. This court allowed father's petition for review.

To place our discussion of the specific issues in context, we recount briefly the history of both the UCCJA and the PKPA. The Commissioners on Uniform State Laws drafted the UCCJA in 1968 to resolve jurisdictional conflicts in child custody cases and to promote recognition and enforcement of out-of-state custody decrees. *Grubs v. Ross*, 291 Or 263, 268-69, 630 P2d 353 (1981). All states have adopted some form of the UCCJA. Anne B. Goldstein, *The Tragedy of the Interstate Child: A Critical Reexamination of the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act*, 25 UC Davis L Rev 845, 849 (1992). Oregon has codified the UCCJA at ORS 109.700 to 109.930. *See Stubbs v. Weathersby*, 320 Or 620, 624-25, 892 P2d 991 (1995) (summarizing the purposes of the UCCJA, as set forth in ORS 109.720(1)).

According to the United States Supreme Court, the UCCJA did not achieve its goal of resolving jurisdictional disputes. *See Thompson v. Thompson*, 484 US 174, 181, 108 S Ct 513, 98 L Ed 2d 512 (1988) (so stating). Contributing to that failure were the lack of uniformity in the versions of the UCCJA adopted by the various states and the refusal by some courts to give full faith and credit to foreign custody decrees on the ground that such decrees are subject to modification in keeping with the best interests of the child. *Id.* at 180-81. In 1980, Congress attempted to resolve jurisdictional disputes by enacting the PKPA "to provide for nationwide

enforcement of custody orders made in accordance with the terms of the UCCJA." *Id.* at 181.

■ Because the PKPA is a federal law and the UCCJA is a state law, in examining the relationship between them we consider whether the doctrine of federal preemption applies. In general, under the Supremacy Clause, Congress has the power to enact an otherwise valid law that preempts state law,[1] and it may preempt state law in one of three ways. "Federal preemption may occur 'by express provision, by implication, or by a conflict between federal and state law.' " *Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 398, 908 P2d 308 (1995) (quoting *New York Blue Cross v. Travelers Ins.*, 514 US 645, 654, 115 S Ct 1671, 131 L Ed 2d 695 (1995)). *See also* Laurence H. Tribe, *American Constitutional Law* (2d ed 1988) § 6-25, at 481 n 14 (explaining the three types of preemption). In deciding whether a federal law preempts a state law, a court's task is to determine whether Congress intended for the federal law in question to supersede state law. *Shaw*, 322 Or at 398 (citing *Shaw v. Delta Air Lines, Inc.*, 463 US 85, 95, 103 S Ct 2890, 77 L Ed 2d 490 (1983)).

The United States Supreme Court has been reticent to find that federal law preempts state law in the area of domestic relations. In that field, the Court has asked "whether Congress has 'positively required by direct enactment' that state law be pre-empted. *Wetmore v. Markoe,* 196 US 68, 77[, 25 S Ct 172, 49 L Ed 390] (1904)." *Hisquierdo v. Hisquierdo*, 439 US 572, 581, 99 S Ct 802, 59 L Ed 2d 1 (1979).

Here, Congress expressly has required in the PKPA that state law respecting certain proceedings to modify child custody determinations be preempted:

---

[1] The Supremacy Clause of the United States Constitution provides, in part:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." US Const, Art VI, cl 2.

In this proceeding, no party challenges the validity of the PKPA on constitutional or other grounds.

*"The appropriate authorities of every State* shall enforce according to its terms, and *shall not modify except as provided in subsection (f) of this section, any child custody determination* made consistently with the provisions of this section by a court of another State." 28 USC § 1738A(a) (emphasis added).

The United States Supreme Court has held that similar wording expressly preempts state law. For example, in *Cipollone v. Liggett Group, Inc.*, 505 US 504, 514-17, 112 S Ct 2608, 120 L Ed 2d 407 (1992), the United States Supreme Court found express preemption both in a 1965 federal statute that provided that "[n]o statement relating to smoking and health shall be required" in cigarette advertising or package labeling that otherwise complies with the act and in a 1969 statute that replaced the foregoing provision with a statement that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to" cigarette advertising or promotion that otherwise complies with the act.[2]

Providing further support for a conclusion that Congress intended expressly to preempt state law on the present topic is the statement of Congressional Findings and Declaration of Purpose that follows the PKPA. Subsection (b) of that statement provides, in part:

*"[I]t is necessary * * * to establish national standards* under which the courts of such jurisdictions will determine their jurisdiction to decide such disputes and the effect to be given by each such jurisdiction to such decisions by the courts of other such jurisdictions." (Emphasis added.)

Congress further stated, in subsection (c)(5) of the statement of Congressional Findings and Declaration of Purpose, that one of the general purposes of the act is to

---

[2] The Court stated:

"In our opinion, the pre-emptive scope of the 1965 Act and the 1969 Act is governed entirely by the express language in § 5 of each Act. When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation." *Cipollone*, 505 US at 517 (citations omitted).

"avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being."

The terms of the statute, combined with those formal statements of congressional intent, show that Congress meant for the PKPA to preempt state law, including the UCCJA.[3] We hold that the PKPA preempts state law on the question of modifying another state's child custody decree.

Having so held, we turn to the PKPA to resolve the dispute now before us. The PKPA requires states to enforce a child custody determination entered by a court of a sister state, if that determination was "made consistently with the provisions of" the act. 28 USC § 1738A(a). A court's custody determination is consistent with the provisions of the act if two conditions are met. 28 USC § 1738A(c). First, the state that entered the decree must have had jurisdiction under its

---

[3] We note that almost all the other jurisdictions that have confronted the question have held that the PKPA preempts state law in determining when a state may exercise jurisdiction in an interstate custody dispute. The following jurisdictions have held that the PKPA preempts state law: *Martinez v. Reed*, 623 F Supp 1050, 1054 (ED La 1985), *aff'd without opinion* 783 F2d 1061 (5th Cir 1986); *Esser v. Roach*, 829 F Supp 171, 176 (ED Va 1993); *Ex parte Blanton*, 463 So 2d 162, 164 (Ala 1985); *Rogers v. Rogers*, 907 P2d 469, 471 (Alaska 1995); *Atkins v. Atkins*, 308 Ark 1, 823 SW2d 816, 819 (1992); *In re Marriage of Pedowitz*, 179 Cal App 3d 992, 999, 225 Cal Rptr 186, 189 (1986); *Matter of B.B.R.*, 566 A2d 1032, 1036 n 10 (DC App 1989); *Yurgel v. Yurgel*, 572 So 2d 1327, 1329 (Fla 1990); *In re Marriage of Leyda*, 398 NW2d 815, 819 (Iowa 1987); *Wachter v. Wachter*, 439 So 2d 1260, 1265 (La App 1983); *Guardianship of Gabriel W.*, 666 A2d 505, 508 (Me 1995); *Delk v. Gonzalez*, 421 Mass 525, 531, 658 NE2d 681, 684 (1995); *In re Clausen*, 442 Mich 648, 502 NW2d 649, 657 n 23 (1993); *Glanzner v. State, DSS*, 835 SW2d 386, 392 (Mo App 1992); *Ganz v. Rust*, 299 NJ Super 324, 334 n 5, 690 A2d 1113, 1118 n 5 (1997); *Tufares v. Wright*, 98 NM 8, 644 P2d 522, 524 (1982); *Leslie L. F v. Constance F*, 110 Misc 2d 86, 441 NYS2d 911, 913 (Fam Ct 1981); *Dahlen v. Dahlen*, 393 NW2d 765, 767 (ND 1986); *Holm v. Smilowitz*, 83 Ohio App 3d 757, 767, 615 NE2d 1047, 1053-54 (1992); *Barndt v. Barndt*, 397 Pa Super 321, 580 A2d 320, 326 (1990); *Marks v. Marks*, 281 SC 316, 315 SE2d 158, 160 (SC App 1984); *Brown v. Brown*, 847 SW2d 496, 499 (Tenn 1993); *In Interest of S.A.V.*, 837 SW2d 80, 87-88 (Tex 1992); *State in Interest of D.S.K.*, 792 P2d 118, 128 (Utah App 1990); *Arbogast v. Arbogast*, 174 W Va 498, 327 SE2d 675, 679 (1984); *State v. Carver*, 113 Wash 2d 591, 607, 781 P2d 1308, 1316, 789 P2d 306 (1990); *Michalik v. Michalik*, 172 Wis 2d 640, 494 NW2d 391, 394 (1993); *State ex rel. Griffin v. District Court*, 831 P2d 233, 237 n 6 (Wyo 1992).

own laws. 28 USC § 1738A(c)(1). Second, one of the five conditions listed in section 1738A(c)(2)(A) through (E) must have been met.[4]

In this case, we must determine whether those two requirements were satisfied at the time that a California court made the *initial* custody determination in October 1987. The first requirement is that California law give its courts jurisdiction. Pursuant to section 200 of the California Family Code, the California Superior Court had authority to make the initial custody determination.

**4.** The second requirement is that one of the conditions listed in 28 USC § 1738A(c)(2) be present. Those conditions commonly are referred to as "home state," "significant connection," "emergency," "default," and "continuing" "jurisdiction." Here, California met the "home state" condition. The child lived with both mother and father in California for the

---

[4] 28 USC § 1738A(c) provides:

"A child custody determination made by a court of a State is consistent with the provisions of this section only if —

"(1) such court has jurisdiction under the law of such State; and

"(2) one of the following conditions is met:

"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

"(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

"(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section."

first year of her life. Mother and father separated in July 1985, at which time mother moved with the child to Oregon. Father began custody proceedings in December 1985. Because the child no longer lived with a parent in California on the date that the proceeding commenced, section 1738A(c)(2)(A)(i) is not satisfied. However, the child was absent less than six months before father commenced the proceeding, and the absence was caused by mother, a contestant. Additionally, father continued to live in California. Therefore, pursuant to section 1738A(c)(2)(A)(ii), California was the child's home state on the date of the commencement of the initial custody proceeding.

Because California was then the child's home state within the meaning of the PKPA, and because California had jurisdiction under its own laws to make the initial custody determination in this case, the October 1987 custody decree was "made consistently with the provisions of" the PKPA. 28 USC § 1738A(c). Accordingly, that decree is entitled to "full faith and credit," as provided in section 1738A(a).

Under section 1738A(f),[5] Oregon nonetheless may modify the 1987 California custody decree, but only if two conditions are met. First, Oregon must be able to modify the 1987 custody decree under its own laws. 28 USC § 1738A-(f)(1). Second, California courts must no longer have jurisdiction or must have declined to exercise jurisdiction. 28 USC § 1738A(f)(2). We turn to those two issues.

■ To determine whether Oregon presently may make a custody determination, we examine the UCCJA as enacted in Oregon. ORS 109.730 lists four conditions, which are similar to the first four listed in 28 USC § 1738A(c). The question is

---

[5] 28 USC § 1738A(f) provides:

"A court of a State may modify a determination of the custody of the same child made by a court of another State, if —

"(1) it has jurisdiction to make such a child custody determination; and

"(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination."

*See also* ORS 109.840 (providing that Oregon court may modify another state's custody decree only if decree state no longer has, or has declined to exercise, jurisdiction).

whether any of those conditions was present when the Oregon *modification* proceeding began.

Both the definition of home state in ORS 109.710(5)[6] and the requirements in ORS 109.730(1)(a)[7] are similar to the equivalent provisions in the PKPA, discussed above. The child has lived with mother in Oregon since July 1985. The custody modification proceeding was filed in Oregon in March 1994. Thus, when the modification proceeding began in Oregon, the child had lived with mother in Oregon for almost nine years, and more than six years had passed since the issuance of the initial California decree. Because the child lived with mother in Oregon for more than six months before the commencement of the modification proceeding and also lived here when the proceeding began, Oregon now is the child's home state. Oregon therefore may modify a custody decree under both ORS 109.730(1)(a) and 28 USC § 1738A-(f)(1).

■       The other issue under the PKPA is whether California has lost jurisdiction or has declined to exercise jurisdiction. The record does not suggest that, to date, California has in fact declined to exercise jurisdiction. 28 USC § 1738A(f)(2). We therefore address whether California continues to have jurisdiction.

California no longer has home state jurisdiction under 28 USC § 1738A(c)(2)(A) because, as concluded above, Oregon now is the child's home state. Jurisdiction based on significant connections under section 1738A(c)(2)(B) does not apply, because such jurisdiction exists only if no other state

---

[6] ORS 109.710(5) defines "home state," in part, as:

"the state in which the child, immediately preceding the time involved, lived with the parents of the child, a parent, or a person acting as a parent, for at least six consecutive months * * *."

[7] ORS 109.730(1)(a) provides:

"A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a)  This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state."

has home state jurisdiction. California lacks emergency jurisdiction under section 1738A(c)(2)(C), because the child is not physically present in that state and because there is no suggestion that the child has been abandoned or otherwise mistreated. Because we have concluded that Oregon would have jurisdiction within the meaning of section 1738A(f)(1), California lacks jurisdiction under section 1738A(c)(2)(D), which applies only when no other state has jurisdiction or when another state has declined to exercise jurisdiction.

The remaining possible basis for California's jurisdiction is continuing jurisdiction under section 1738A-(c)(2)(E), which requires that the two conditions in section 1738A(d)[8] be met. Under subsection (d), California has continuing jurisdiction if it remains the residence of the child or of any contestant and if it has jurisdiction under its own state laws. The first prong of that provision is satisfied, because father continues to reside in California.

The second prong involves an analysis of California's laws to determine whether that state currently has jurisdiction under its own laws. Specifically, we must determine whether a California court has jurisdiction to modify an initial California decree granting the parents of a minor child joint legal custody and giving physical custody to a non-California parent, when the child has lived with that parent outside California for several years but visits the other parent periodically in California. That is so because section 1738A(d) incorporates by reference the requirement of section 1738A-(c)(1) that the decree state presently have jurisdiction under its own laws.

Under California law, the governing statute is California Family Code §§ 3400 to 3425. Its application involves a two-step process. First, the court must determine whether it

---

[8] 28 USC § 1738A(d) provides:

"The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant."

Subsection (c)(1) is quoted above, 326 Or at 173 n 4.

has jurisdiction to make or to modify a custody determination. Cal Fam Code § 3403. If so, the court conducts an inconvenient forum analysis to determine whether it should decline to exercise jurisdiction on the basis that California is an inconvenient forum and that another state is a more appropriate forum. Cal Fam Code § 3407(a);[9] *Kumar v. Superior Court of Santa Clara Cty.*, 32 Cal 3d 689, 700-01, 652 P2d 1003, 1010-11, 186 Cal Rptr 772, 779-80 (1982).

In determining whether California has and should exercise jurisdiction in factual situations like the one before us, California Courts of Appeal have followed a line of cases suggesting that a trial court has no discretion to exercise jurisdiction when the California forum is substantially inconvenient in comparison to another forum. *See, e.g., Clark v. Superior Ct. in and for County of Mendocino*, 73 Cal App 3d 298, 140 Cal Rptr 709 (1977) (California court must decline to exercise jurisdiction, when mother and child had moved to Oregon several years before California modification proceeding began, even though child had visited father in California almost every summer); *Hafer v. Superior Court, County of San Diego*, 126 Cal App 3d 856, 179 Cal Rptr 132 (1981) (California court must decline to exercise jurisdiction, when father and children had moved to Idaho more than three years before California modification proceeding began and Idaho had become the children's home state; "home state concept is * * * of the utmost importance," 126 Cal App 3d at 866, 179 Cal Rptr at 138). *See also Schlumpf v. Superior Court of Cty. of Trinity*, 79 Cal App 3d 892, 145 Cal Rptr 190 (1978) (Wyoming has jurisdiction to modify a California custody decree and is a more convenient forum than California, when the children have lived with their father in Wyoming for the past five years); *Bosse v. Superior Court for Cty. of Santa Clara*, 89 Cal App 3d 440, 152 Cal Rptr 665 (1979) (California

---

[9] California Family Code § 3407(a) provides:

"A court which has jurisdiction under this part to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum."

The statute also lists factors for a court to consider in making that determination. Cal Fam Code § 3407(c).

court should decline to modify a California custody decree on the basis of inconvenient forum, when child has lived with mother in Montana for two and one-half years). This case shares significant factual similarities with the cited cases.

The final interpretive question before us is whether, in the foregoing cases, the California courts "no longer ha[d] jurisdiction," 28 USC § 1738A(f)(2), or whether instead the California courts simply "declined to exercise" jurisdiction. *Ibid.* Even though California appellate courts have held that, in certain circumstances, trial courts have no discretion to decide the merits of a modification request as a matter of law, those decisions have been made under the statute relating to a court's "declin[ing] to exercise jurisdiction" on the basis of inconvenient forum. Cal Family Code § 3407(a). That is, the quoted statutory phrase suggests that the California trial court "has jurisdiction" that it must "decline to exercise," not that the trial court "no longer has jurisdiction" at all. Accordingly, we do not believe that those cases can be read to stand for the proposition that the California forum may be so inconvenient in comparison to another forum that California "no longer has jurisdiction" within the meaning of 28 USC § 1738A(f)(2). We therefore conclude that California meets the requirements of 28 USC § 1738A(d) and has "continuing jurisdiction" within the meaning of 28 USC § 1738A(c)(2)(E). That being so, the Oregon court lacked authority under the PKPA to modify the California custody decree, in the absence of a California court's actually declining to exercise jurisdiction.[10]

[10] Under the PKPA and under the California and Oregon versions of the UCCJA, the California court may transfer all issues of custody and visitation to Oregon, if the California court decides that Oregon is a more convenient forum. 28 USC § 1738A(c)(2)(D); Cal Fam Code § 3407; ORS 109.770. The Oregon court may contact the California court to request such a determination. ORS 109.770(4); Cal Fam Code § 3407(d). A principal goal of Oregon's and California's versions of the UCCJA and of the PKPA is to encourage communication between states so that a custody determination is rendered in the state that is in the best position to decide the case. *See* ORS 109.720(1)(b) and (h) ("The general purposes of [Oregon's UCCJA] are to * * * [p]romote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child * * * [and to p]romote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child."); Cal Fam Code § 3401 (similarly stating); 28 USC § 1738A Congressional Findings and Declaration of Purpose (c)(1) and (2) (same).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for further proceedings.