VILLANTI, Judge.
The Department of Children and Family Services and Sally Davies, the guardian ad litem (collectively “the Department”), appeal from the trial court’s order requiring that two children, D.N. and K.N., be returned to the custody of their father, D.N., in Hawaii. Because there is a valid order from the Hawaii court giving D.N. legal custody of the two children, we affirm. We write to point out that it is the Department’s refusal to respect controlling statutory authority that prevented the proper resolution of this case for over eighteen months.
As of January 2001, D.N., his wife, S.N., and the two children were living in Hawaii. For reasons not apparent from our record, on January 29, 2001, D.N. obtained a temporary restraining order requiring S.N. to vacate the family home and have no contact with D.N. or the two children. On March 13, 2001, the Hawaii court entered a “Family Court Order for Protection” that continued many of the terms of the temporary restraining order. The Order for Protection also gave D.N. both legal and physical custody of the two children and provided for supervised visitation between S.N. and the two children.[1] In addition, the Order for Protection required S.N. to “return the minor children of the parties, [D.N. and K.N.], to the care and custody of the Petitioner in the State of Hawaii forthwith.” The Order for Protection is in effect by its own terms until January 28, 2004.
Between the entry of the temporary restraining order on January 29, 2001, and the entry of the Order for Protection on March 13, 2001, S.N. took the two children and left Hawaii. In August 2001, S.N. was arrested in Florida, and the Department sheltered the two children.[2] On October 10, 2001, the Department filed a petition for dependency of the two children against S.N. only. The Department has never filed a petition for dependency of the two children against D.N.
On October 12, 2001, D.N. filed a motion seeking to have the two children returned to him in Hawaii based on the Hawaii custody order. In support of this motion, D.N. referred the court to the Uniform Child Custody Jurisdiction Act (UCCJA), §§ 61.1302-1348, Fla. Stat. (2001), which controls disputes between states concerning child custody orders. D.N. specifically cited section 61.1314, which states in pertinent part:
A court of this state shall not exercise its jurisdiction under this act if, at the time the petition is filed, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in con *1089 formity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
The Department apparently contested D.N.’s motion, and despite the clear statutory directive requiring the Florida court to defer to the Hawaii custody order, the trial court denied D.N.’s motion to have the two children returned to him.
After the trial court denied D.N.’s motion, the Department filed a ease plan purporting to assign D.N. tasks to complete in order to be reunited with his children. Despite the fact that the Department had never sought to have the children declared dependent as to D.N. and the fact that the court had never declared the children dependent, the trial court approved the case plan.
During the remainder of 2001 and all of 2002, D.N. continued to seek to have the Hawaii custody order enforced. Finally, on January 14, 2003, the trial court held an evidentiary hearing concerning returning the two children to D.N. At that hearing, the Department raised no issues concerning compliance with the Interstate Compact on the Placement of Children (ICPC), section 409.401, Florida Statutes (2001). It did, however, continue to express its concerns that D.N. was an inappropriate caregiver, and it insisted that the two children should remain in the Department’s care. At the close of the hearing, the trial court ordered that the two children be returned to D.N., but the court cited no statutory authority for its decision. The Department’s motion for rehearing was denied.
Not to be dissuaded from its view of the matter, the Department then refused to transport the children to Hawaii. When D.N.’s attorney filed a motion to enforce the trial court’s order and offered to take the children to Hawaii herself, the Department raised the issue of compliance with the ICPC. At the hearing on D.N.’s motion to enforce, the Department argued that the Hawaii ICPC compact administrator had not approved the placement of the children with D.N. The trial court noted that the Department had not raised this issue before, stating:
I really don’t like this piecemeal stuff. The last time we were in here on this matter Ms. Dramko [D.N.’s attorney] submitted a letter to the Court from Hawaii basically saying it was okay. Now we’ve got another letter saying that it’s not okay.
I am not for breaking up somebody’s family, I am not for participating in what I consider to be what is equivalent to a kidnapping of these children from their father and brought to this part of the country. You know, it seems like the department has made hostages of these children and they don’t want to give them back. Why? There’s no real reason that’s been posed.
Misdemeanor convictions are not enough as far as I’m concerned to keep a child away [from] his father or her father. That is not enough.
Deliver the children to their attorney.
The Department then filed this appeal from the trial court’s order. The Department’s motion for stay filed in the trial court was denied, as was its motion for stay filed in this court. Therefore, it appears that the children were finally reunited with their father in April 2003.
The Department is charged by the legislature with providing for the care, safety, and protection of children. § 39.001(l)(a), Fla. Stat. (2001). While pursuing this objective, the Department is to “intrude as little as possible into the life of the family, be focused on clearly defined objectives, *1090 and take the most parsimonious path to remedy a family’s problems.” § 39.001(l)(b)(S). In addition, as the Department often reminds this court, the Department is to “ensure that permanent placement with the biological or adoptive family is achieved as soon as possible for every child in foster care and that no child remains in foster care longer than 1 year.” § 39.001(l)(h). Despite these clear directives and objectives, the Department in this case has done everything within its power to prevent the reunification of D.N. with his children for almost eighteen months, including misleading the trial court, and attempting to mislead this court, about the controlling law.
Resolution of this case is controlled by the provisions of the UCCJA and the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (2001). The overriding purpose of both the UC-CJA and the PKPA is
“to prevent interstate competition and conflicts” about custody disputes among various jurisdictions of the American Union. Padgett v. Pettis, 445 So.2d 633, 635 (Fla. 1st DCA), cause dismissed, 450 So.2d 487 (Fla.1984). The UCCJA, in other words, was designed to bring order out of the chaos that once marked interstate custody disputes when the courts of different states claimed authority to issue contradictory custody orders. This intent must be the polestar by which these enactments must be interpreted ... and it is the obligation of the Florida courts to honor this intent even if it seems contrary to the literal language of the statute.
Yurgel v. Yurgel, 572 So.2d 1327, 1329-30 (Fla.1990). Under both the UCCJA and the PKPA, the Florida court had absolutely no authority to entertain the Department’s efforts to ignore or modify the Hawaii custody order. Section 61.1304(1) states that the purposes of the UCCJA are, among other things, to avoid jurisdictional conflict with other states in matters of child custody, to assure that litigation concerning custody takes place in the state with the closest connections to the children, to avoid reliti-gation of custody decisions of other states, and to facilitate the enforcement of custody orders of other states. In order to give effect to these purposes, a Florida court must defer to another state’s custody order if, when the petition was filed in Florida, a similar proceeding was pending in a court of another state exercising jurisdiction under the UCCJA. § 61.1328; Chaddick v. Monopoli, 714 So.2d 1007, 1009 (Fla.1998). Moreover, Florida courts are forbidden to modify another state’s custody order unless the court rendering that order no longer has jurisdiction or has expressly declined to exercise that jurisdiction. § 61.133. See also Yurgel, 572 So.2d at 1329. Florida courts have repeatedly held that deference to the court entering the initial custody order is the rule, not the exception. See, e.g., Chaddick, 714 So.2d at 1010 (refusing to entertain jurisdiction under the UCCJA to modify custody when Virginia had previously entered a valid custody order and had not declined jurisdiction); Yurgel, 572 So.2d at 1332 (holding that New York had no jurisdiction under the UCCJA to modify a Florida custody order when Florida retained continuing jurisdiction and had not declined to exercise that jurisdiction); Bello v. Kruzel, 732 So.2d 1113, 1116 (Fla. 4th DCA 1999) (holding that the New York court had no jurisdiction under the UC-CJA to modify a Florida custody order when Florida retained continuing jurisdiction and had not declined to exercise that jurisdiction).
In this case, the Hawaii court entered a valid custody order on January 29, 2001, *1091 and again on March 13, 2001, in a custody proceeding. See § 61.1306(3) (defining a “custody proceeding” for purposes of the UCCJA as including any action in which custody is one of several issues to be determined). Hawaii has adopted the UC-CJA as part of its statutory scheme, and its actions were taken pursuant to the jurisdictional requirements of the UCCJA. Haw.Rev.Stat. § 583A-101 et seq. (2001). Further, it is apparent from the record that Hawaii was the “home state” of the two children when the Hawaii custody order was entered. § 61.1306(5) (defining “home state” as the state in which the child has lived with his or her parents for the six months immediately preceding the time involved in entering the order at issue). Thus, Hawaii clearly had jurisdiction under the UCCJA to enter its order giving custody of the two children to D.N. Because Hawaii never lost jurisdiction or declined to exercise jurisdiction over this matter, the trial court in this case was required to enforce the Hawaii custody order pursuant to the UCCJA. See § 61.1328.
Moreover, the trial court was also required to enforce the Hawaii custody order pursuant to the PKPA. Under the PKPA, “every State shall enforce according to its terms, and shall not modify except as provided by subsections (f), (g), and (h) of this section, any child custody determination or visitation determination made consistently with the provisions of this section by a court of another State.” 28 U.S.C. § 1738A(a). Essentially, the PKPA preempts state law on the question of modifying another state’s child custody order. Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988); Yurgel, 572 So.2d at 1329; In re Henry, 326 Or. 166, 951 P.2d 135 (1997). Thus, the first inquiry is whether the Hawaii court entered its custody order consistently with the PKPA. The second is whether the Florida court could validly modify that order.
Under the PKPA, a custody order is entered consistently with the provisions of the act if:
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child’s home State within six months before the date of commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State[.]
28 U.S.C. § 1738A(c). It is clear from the record that Hawaii was the home state of the two children when the order was entered giving D.N. temporary legal custody of them. Therefore, the Hawaii custody order was entered consistently with the provisions of the PKPA.
Having determined that the Hawaii custody order was a valid exercise of the Hawaii court’s jurisdiction, we turn to the question of whether the Florida court had the right to modify that order. A reading / of the PKPA shows that it did not. Section 1738A(c)(2)(C) allows a Florida court to make an initial child custody determination if the child is physically present in Florida and it is necessary in an emergency to protect the child because he or she has been subject to mistreatment. However, here, an initial custody determination had already been made by the Hawaii court in January 2001 and March 2001. The Florida court could modify that initial custody determination only if “the court of the other State no longer has jurisdiction, *1092 or it has declined to exercise such jurisdiction to modify such determination.” 28 U.S.C. § 1738A(f)(2).
Here, pursuant to the PKPA, Hawaii had continuing jurisdiction to enforce its existing custody order because D.N. remained a resident of Hawaii. 28 U.S.C. § 1738A(d) (holding that the jurisdiction of the State that made the child custody determination continues as long as that State remains the residence of the child or of any parent). There is absolutely nothing in the record to show that Hawaii declined to exercise jurisdiction. Rather, the clear terms of the Order for Protection show that Hawaii intended to continue to exercise jurisdiction until January 28, 2004. Accordingly, the Florida court had no authority to modify the Hawaii custody order by entertaining the Department’s petition to place the children in foster care or to put them up for adoption. Rather, the Florida court should have enforced the Hawaii custody order in October 2001 and returned the children to D.N. at that time. Had the Department simply conceded, as it should have, that D.N.’s October 2001 motion pursuant to the UCCJA was well taken, the two children would have been returned to their father eighteen months sooner.
Only one reported Florida decision has addressed the interplay between the UC-CJA, the PKPA, and a dependency petition. In Johnson v. Denton, 542 So.2d 447, 448 (Fla. 5th DCA 1989), a 1985 Arkansas divorce decree gave Denton, the mother, custody of the parties’ daughter but prohibited her from removing their daughter from Arkansas. Denton subsequently moved with her daughter to Florida without advising either the court or the father, Johnson. In March 1987, the Department filed a petition for dependency in Florida alleging that Denton had abused and neglected her daughter. The child was originally placed with her grandmother, but the placement was subsequently changed to foster care. When Johnson learned that his daughter was in foster care, he sought a modification of custody in the Arkansas court. The Arkansas court entered an order modifying custody and placing the daughter in Johnson’s custody. Despite this order, the Department refused to return the child to him in Arkansas, and the trial court refused to order the transfer. Id. at 449.
The Fifth District noted that the PKPA prohibited the Florida court from modifying the Arkansas custody order because Arkansas had continuing jurisdiction under 28 U.S.C. § 1738A(d), and it had not declined to exercise that jurisdiction. Id. at 449 n. 1. The Fifth District also noted that the Arkansas court had not lost jurisdiction simply because the child was no longer present in the State and had not been for over six months. Rather, the court noted that since the child had lived in Arkansas for over three and one-half years before being removed to Florida by Denton in violation of a court order and because Johnson continued to reside in Arkansas, Arkansas had continuing jurisdiction based on the child’s significant contacts with the state. Under these circumstances, the Fifth District held:
The trial court should have declined to exercise jurisdiction over HRS’s petition for dependency. While the trial court could have issued a temporary order maintaining custody in HRS’s care for a short period of time in the best interests of the child, see Nussbaumer v. Nussbaumer, 442 So.2d 1094 (Fla. 5th DCA 1983), the court erred in adjudicating the child dependent and placing the child in the custody of HRS without first requiring the petitioner to comply with the requirements of the UCCJA and then considering whether it should exer *1093 cise jurisdiction under the provisions of that act. Because Arkansas had jurisdiction to enter the temporary order changing custody from the mother to the father, this custody order should now be enforced pursuant to section 61.1332, which requires the state to enforce custody decrees of other states....
Id. at 449-50. See also In re Christopher C., Case No. B147213, 2002 WL 80290 (Cal.Ct.App. Jan.22, 2002) (holding that when the California Department of Children and Family Services filed a petition for dependency after an Alabama court had entered an order giving Christopher’s father custody of him, the California court could have validly issued an interim custody order pending the court’s determination of whether the Alabama custody order was entered in compliance with the UCCJA, but nothing more).
Here, as in Johnson, the Florida court had the authority to issue a temporary order keeping the two children in shelter care until their return to Hawaii could be arranged. However, the Florida court should not have purported to exercise any further jurisdiction over the two children in contravention of the UCCJA and the PKPA. Under the clear reasoning of Johnson, by which the trial court was bound in the absence of other authority, the trial court acted properly in ultimately enforcing the Hawaii custody order.
While not saying so directly, the Department appears to believe that the ICPC, rather than the UCCJA and the PKPA, controls the resolution of this case. Simply put, this is not so. The purpose of the ICPC is to facilitate cooperation between states in the placement and monitoring of dependent children. § 409.401, Fla. Stat. (2001); Dep’t of Children & Families v. Benway, 745 So.2d 437, 438 (Fla. 5th DCA 1999). The ICPC is primarily procedural, and it governs the relations between states when decisions are made as to where to place a dependent child. Benway, 745 So.2d at 438; J.D.S. v. Franks, 182 Ariz. 81, 893 P.2d 732, 740 (1995) (en banc). Essentially, the ICPC compact administrator in the “sending state” recommends a placement and provides the “receiving state” with information concerning the proposed placement. § 409.401, art. III, Fla. Stat. (2001). The ICPC compact administrator in the “receiving state” then determines whether, in his or her opinion, the placement is appropriate. Id.
Nowhere does the ICPC purport to allow the ICPC compact administrator in either the “sending state” or the “receiving state” to ignore or contradict preexisting court orders concerning the custody and placement of children. Further, at least one court has noted that it would be “counterproductive to interpret the ICPC as negating the jurisdictional provisions of the UCCJA.” J.D.S., 893 P.2d at 745. In this case, the Hawaii court determined the appropriate placement for the two children in January 2001. Regardless of whether the Florida or Hawaii ICPC administrators agreed with the Hawaii court’s placement decision, they were required to obey that court order, and the Florida court was required to enforce it.
None of the cases cited by the Department hold otherwise. While the Department argues that the ICPC applies to transfers of children even when the placement is with a biological parent, none of the cases relied upon by the Department involved a “receiving parent” who had a valid custody order from his or her home state placing custody of the children with that parent. Rather, in every case cited by the Department, the “receiving parent” was seeking an initial award of custody. See H.P. v. Dep’t of Children & Families, *1094 838 So.2d 588 (Fla. 5th DCA 2003) (requiring compliance with the ICPC when the only court order in existence awarded custody to the father and the mother was seeking custody after the children were declared dependent); Benway, 745 So.2d at 437 (requiring compliance with the ICPC when natural father sought custody and there was no custody order placing children with father); Dep’t of Econ. Sec. v. Leonardo, 200 Ariz. 74, 22 P.3d 513 (Ct.App.2001) (requiring compliance with ICPC after children were declared dependent as to father, who had custody under a Texas custody order, when mother sought custody). Further, the Department has made no attempt to distinguish the Fifth District’s Johnson case, which dealt with facts virtually identical to the ones presented here.
In the absence of some authority indicating that the procedural requirements of the ICPC trump the enforcement mandates of the UCCJA and the PKPA, the Department cannot show that the trial court acted improperly in enforcing the Hawaii custody order and returning the two children to D.N. Moreover, because the Department has never filed a petition seeking to declare the two children dependent as to D.N. and because the Florida courts would have no jurisdiction to entertain such a petition in light of the Hawaii custody order, on remand the case must be dismissed as to the two children, D.N. and K.N., and as against the father, D.N.
Finally, we note that the Department has come under increased public scrutiny during the past year concerning the way that it has handled, or mishandled, certain cases. Given that scrutiny, we fail to understand why the Department chose to focus its efforts in this case on keeping the two children from a father who clearly wants them and who has a valid court order awarding him custody. Further, we fail to understand why the Department chose not to bring the controlling provisions of the UCCJA and the PKPA to either the trial court’s or this court’s attention. In making these choices, the Department strayed from its legislatively mandated objectives, and its attorneys strayed from their duty to bring controlling authority to the court’s attention. We trust that this opinion will assist the Department in refocusing its efforts onto those cases in which its assistance is truly needed.
Affirmed and remanded with instructions to dismiss the case as to the children, D.N. and K.N., and their father, D.N.
WHATLEY and SALCINES, JJ., Concur.

. An older child was also placed in D.N.'s legal and physical custody by the Order for Protection; however, that child was not involved in these proceedings.

. S.N.’s older daughter by a different father was also sheltered. This daughter is not involved in this action.