677 So.2d 347 (1996)
Karen CHADDICK f/n/a Karen Monopoli, Petitioner,
v.
Joseph MONOPOLI, Respondent.
No. 95-1328.
District Court of Appeal of Florida, Fifth District.
June 28, 1996.
Donald P. Sluder, Ocoee, for Petitioner.
No Appearance for Respondent.
EN BANC.
GOSHORN, Judge.
Karen Chaddick seeks certiorari review of the trial court's order dismissing her petition *348 to enforce a Massachusetts divorce decree's child custody provision.[1] Following a telephonic hearing with a Virginia judge pursuant to subsection 61.1316(4), Florida Statutes (1993), the trial court concluded that the Virginia court had assumed jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA).[2] It therefore dismissed Chaddick's petition, deferring to the Virginia court's jurisdiction. On appeal, Chaddick argues that there should be an evidentiary hearing and that the case should proceed on its merits in Florida. The record affirmatively shows the Florida trial court acted in conformity with the dictates and objectives of the UCCJA in finding that the Virginia court properly assumed jurisdiction and considered the issues Chaddick wishes to raise in Florida. We therefore affirm the dismissal of Chaddick's Florida petition. See § 61.1314(1), Fla. Stat. (1993) (providing that a court of this state shall not exercise its jurisdiction under the UCCJA if, at the time the petition is filed, a proceeding concerning child custody is pending in a court of another state exercising jurisdiction substantially in conformity with the UCCJA).
Chaddick appeared and participated in the custody proceedings in Virginia. Dissatisfied with the Virginia proceedings, Chaddick filed her petition to enforce the child custody provisions of the Massachusetts divorce decree in the circuit court of Orange County, Florida. Judge Baker, after a telephonic conversation with the Virginia judge, concluded that the Virginia court had jurisdiction over the child custody issue. See § 61.1316(4), Fla. Stat. (1993). Judge Baker found that only a month earlier the Virginia court had heard all the same matters Chaddick was asserting in her Florida petition and had ruled against Chaddick on them. Implicit in the dismissal of Chaddick's Florida petition is Judge Baker's finding that the Virginia court had exercised its jurisdiction substantially in conformity with the UCCJA. The Virginia court, under the "Best Interest Doctrine," could have properly assumed jurisdiction upon finding that the children and one of the parents had a significant connection with that state. See § 61.1308(1)(b)1., Fla. Stat. (1993); Siegel v. Siegel, 575 So.2d 1267 (Fla. 1991) (New York court, in which custody proceeding was brought prior to commencement of proceedings in Florida court, was appropriate forum for determining child custody, even though it was claimed that New York was not exercising jurisdiction in conformity with the UCCJA; child was in New York with one parent at the time proceeding commenced there, thus providing jurisdictional basis).
In this case, Chaddick, upset by adverse rulings in Virginia, filed a petition in Orange County in hopes of finding a more favorable forum. This runs counter to the stated purposes of the UCCJA, namely to avoid jurisdictional competition in conflict with courts of other states, to discourage continuing controversies over child custody, and to avoid relitigation over custody decisions of other states insofar as possible. See § 61.1304(1), (4), and (6), Fla. Stat. (1993). The child custody issue has been litigated in Virginia, where both parties appeared and a complete record developed. If the Virginia court erred in assuming jurisdiction, that issue should be raised in the appropriate appellate court in Virginia. Accordingly, the trial court's order dismissing Chaddick's petition is affirmed.
AFFIRMED.
PETERSON, C.J., and COBB, THOMPSON and ANTOON, JJ., concur.
HARRIS, J., concurs and concurs specially, with opinion.
W. SHARP, J., dissents, with opinion, in which DAUKSCH and GRIFFIN, JJ., concur.
HARRIS, Judge, concurs and concurs specially.
While there is much in the language of the dissent with which I agree, I believe the dissent has missed the most critical aspect of *349 this case. Appellant has had her day in court on her issue of jurisdiction and, perhaps in the Virginia appeal process, is still having it. It is not our function as Florida courts, trial or appellate, to review the decisions of the trial courts of our sister states which decide issues voluntarily submitted to them by citizens of our state.
Of course this matter involves a custody dispute properly covered by the Uniform Child Custody Jurisdiction Act. The father, who had the children in Virginia by virtue of his summer visitation, filed his action in the Virginia court to change custody. In his petition (among other allegations), he alleged that he was unable to redeliver custody to the mother because she had moved and refused to give him or the police her new address. The mother appeared in these proceedings and therefore personal jurisdiction over her is not an issue.
For whatever reason, the trial court gave custody to the father. The record of that proceeding is not before us. It may well be before the Virginia Court of Appeal. What is before us is the mother's admission in her petition:
[Petitioner herein] has cooperated and fully participated in the Court proceedings in Virginia in an attempt to rectify the injustice which has occurred, but all efforts in that jurisdiction have failed .... [emphasis added].
It appears that petitioner challenged the factual findings that convinced Judge Jannene Shannon of the Virginia Juvenile and Domestic Relations District Court to assume jurisdiction. In her Memorandum of Law filed with the Virginia trial court, the petitioner stated:
The determinations which must be made under both the state and federal law are factual. Petitioner submits that there was not a situation at that time which would have permitted the court to exercise "emergency" jurisdiction over the children under either statute.
If, in fact, Judge Shannon determined that the mother's refusal to divulge her whereabouts to the father constituted grounds to invoke the emergency provision of the UCCJA, a challenge to such finding should be lodged with the Virginia Court of Appeal and not with the courts of this state. Having submitted this very issue to the Virginia court and having lost, the mother should not expect a Florida court to reverse or ignore a ruling by a Virginia tribunal. The court in Dusesoi v. Dusesoi, 498 So.2d 1348,1349 (Fla. 2d DCA 1986), stated the law as follows:
Where a defendant makes a special appearance to challenge the jurisdiction of a court, and the court overrules the objection and determines that it does have jurisdiction, the decision is res judicata and precludes collateral attack on the judgment, even though the ruling may have been erroneous on the facts or law. [Citation omitted]. An aggrieved defendant must seek reversal in an appellate court of the state involved or, if he is unsuccessful there, in the Supreme Court of the United States.
[H]e cannot later attack the judgment on jurisdictional grounds if he does not avail himself of those remedies, or if the judgment is affirmed, or if the appellate court or the Supreme Court of the United States declines to consider the case.
If the mother wished to challenge the authority of the Virginia courts to hear this issue without submitting herself to the jurisdiction of the Virginia courts, she should have filed her petition to domesticate and enforce the Massachusetts judgment in Florida. Then the assigned judges, pursuant to the UCCJA, would determine which state should proceed. Indeed that is a primary function of the UCCJA. In our case, the mother did not come to the Florida courts until the Virginia court had not only, with her full participation, ruled on the issue of jurisdiction but also had awarded custody of the children to the father. This was too late.
Judge Baker, in his order dismissing the petitioner's claim, specifically found that Judge Shannon heard all of the matters raised by petitioner in this cause and ruled against her. Under Dusesoi, she had her bite of the apple.
The dissent cites Newcomb v. Newcomb, 507 So.2d 1145 (Fla. 3d DCA 1987), in support of its position that Florida courts have *350 jurisdiction to determine if a foreign court is exercising jurisdiction "substantially in conformity" with the UCCJA. But in Newcomb, the petitioner had not appeared in the California court to unsuccessfully contest this same issue. While a special appearance preserves the issue of jurisdiction, it does so only for the purpose of appeal. It appears that petitioner has preserved the issue of the court's jurisdiction for appeal to the Virginia Court of Appeal. A special appearance, however, does not alter the fact that petitioner has voluntarily submitted the issue concerning which state should have jurisdiction under the UCCJA to the courts of Virginia. Having lost this issue in a forum in which she voluntarily appeared, Judge Baker was correct in not giving her a second bite of the apple.
W. SHARP, J., dissenting.
The UCCJA[1] should be interpreted in such a way that gives it definite meaning. That lessens the potential that two different states will claim jurisdiction in child custody cases. My primary objection to the majority opinion is that, by denying certiorari review, we have simply crossed our fingers and hoped that there is some basis for Virginia to have assumed subject matter jurisdiction to modify a child custody decree, without requiring that the record provide us with any objective ground for why Virginia had subject matter jurisdiction under the UCCJA. In similar cases, our sister court has remanded and instructed the trial judge to proceed to develop a record which would indicate whether the out-of-state court was acting in substantial conformity with the UCCJA in assuming jurisdiction. See Burkhalter v. Burkhalter, 634 So.2d 761 (Fla. 1st DCA 1994); Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991); Hickey v. Baxter, 461 So.2d 1364 (Fla. 1st DCA 1984). If it is so acting, that record should be reviewed by us on appeal.[2] If not, the trial court should afford such relief as may be appropriate and possible.
The majority is in error when it says Virginia could have obtained jurisdiction because of the "best interest of the child," section 61.1308(1)(b), since the record shows without contradiction that Florida is the home state of the children, Florida had not declined jurisdiction, and Virginia had no connection with them other than that they were sent there for visitation for a two-month period, and then were detained there in violation of the visitation provisions of a Massachusetts child custody decree. Nor should the fact that modification of custody proceedings were first brought in Virginia allow Virginia a basis for subject matter jurisdiction pursuant to section 61.1314(1), Florida Statutes (1993), since that section requiring deference to the custody proceedings brought in a sister state, also requires that the other state be acting in conformity with the UCCJA jurisdictional guidelines. Further, there is no basis in this record to conclude that Chaddick should be estopped or bound by the Virginia trial court's ruling simply because she appeared in Virginia and challenged the subject matter jurisdiction of that court.
Chaddick petitions this court for certiorari review of a Florida trial court order that summarily dismissed her petition to enforce the child custody provisions of a Massachusetts divorce decree. Without holding an evidentiary hearing or requesting copies of pleadings or other documents generated by a custody proceeding then in progress in Virginia, the Florida trial judge determined the court in Virginia properly assumed jurisdiction of the child custody issue pursuant to the UCCJA, and that Florida lacks subject *351 matter jurisdiction. The Florida judge apparently had a telephone conversation with the Virginia judge, which was not recorded. In dismissing Chaddick's petition, the Florida judge also stated Chaddick had raised challenges to the Virginia court's subject matter jurisdiction in the custody suit, in Virginia, and had suffered adverse rulings.
From the pleadings in this case it appears that Chaddick and Monopoli were divorced in Massachusetts in 1988. Chaddick, the mother, was awarded primary custody of the two minor children who had been born of this union. Monopoli, the father, was given visitation rights.
In 1991, Chaddick moved to Florida and they became Florida residents. The two children were enrolled in school in St. Cloud, Florida. Monopoli left Massachusetts for Vermont. He later moved his residence to Charlottesville, Virginia.
In time, Monopoli fell $14,000.00 behind in his child support obligations. The State of Florida, through the Department of Health and Rehabilitation Services, filed suit in Osceola county, Florida, to enforce the child support requirements of the Massachusetts divorce decree. The enforcement suit in Virginia was apparently abated, because authorities could not locate Monopoli.
Carrying out the visitation requirements of the Massachusetts decree, Chaddick sent the children to Charlottesville, Virginia, for summer visitation with Monopoli during the months of July and August of 1993. Monopoli promised Chaddick that he would return the children to Florida on August 6, 1993. At the end of the visitation period, Monopoli refused to return the children. Instead he filed a petition to obtain custody of them, in a Virginia court.[3]
Initially, it does not appear from a copy of the pleading attached to Chaddick's petition for certiorari, that Monopoli's Virginia custody petition meets the jurisdictional prerequisites of the UCCJA. It simply recites that he has had summer visitation with the children, in Virginia, that Chaddick was awarded their primary custody pursuant to a Massachusetts decree, that he does not have Chaddick's address, that Chaddick is pregnant and living with a man to whom she is not married, and that it is in the best interests of the children that he be awarded their custody. None of the information the UCCJA requires to be given under oath to a court asked to consider child custody issues was furnished to the court in Virginia, based on the certified pleading in Chaddick's appendix. The pleading is not under oath, and no affidavit is attached to it. It does not give the children's present address, nor their prior addresses for the past five years, nor the names of the persons with whom they lived or those persons' addresses. See § 61.132, Fla. Stat. (1993). Such a pleading which fails to establish any of the jurisdictional requirements of the UCCJA does not vest a court with child-custody, subject-matter jurisdiction. See Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991); Perez v. Perez, 519 So.2d 1104 (Fla. 3d DCA 1988); Mouzon v. Mouzon, 458 So.2d 381 (Fla. 5th DCA 1984).
Further, the custody petition filed by Monopoli frames no possible basis for the State of Virginia to take subject matter jurisdiction under the UCCJA to modify the custody decree entered by the State of Massachusetts. *352 First, it is not clear from this petition that Massachusetts has lost jurisdiction to modify its own custody decree. Pursuant to both the UCCJA and the PKPA,[4] only the state that entered the decree has jurisdiction to modify it, if one of the parties has maintained contact with that state. Yurgel v. Yurgel, 572 So.2d 1327 (Fla.1990); Steward v. Steward, 588 So.2d 692 (Fla. 5th DCA 1991); Steckel v. Blafas, 549 So.2d 1211 (Fla. 4th DCA 1989); Gordey v. Graves, 528 So.2d 1319 (Fla. 5th DCA 1988); Hamill v. Bower, 487 So.2d 345 (Fla. 1st DCA 1986); McDougald v. Jenson, 786 F.2d 1465 (11th Cir.), cert. denied, 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986).
Second, assuming from these pleadings it can be surmised the parties and the children have left Massachusetts, so that state no longer has subject matter jurisdiction to modify its own decree, Monopoli's petition frames no basis upon which Virginia should assume jurisdiction. He does not allege that Virginia is the home state of the children.[5] Where another state was the home state of children, who were only temporarily in Virginia, the Virginia courts have ruled Virginia lacks jurisdiction under the UCCJA to determine custody.[6] Monopoli also failed to allege that the children or even he, himself, have a significant connection with Virginia, and that there is available in Virginia substantial evidence concerning the children's present or future care, protection, training, and personal relationships.[7] Where another state is a child's home state, and most of the evidence concerning the child, plus witnesses are in another state, Virginia courts decline to assume jurisdiction over custody determinations.[8] Nor does Monopoli's petition set forth a basis under the limited circumstances described by section 61.1308(c)physical presence of the child plus abandonment or an emergency or 61.1308(d)no other state would have jurisdiction or another state has declined to exercise jurisdiction.
Even if Virginia were the state which initially entered the custody decree, which it was not, and one parent still lived in Virginia, the Virginia Supreme Court ruled in a similar case that the trial court in Virginia should have declined to accept jurisdiction to modify the initial decree because another jurisdiction had far closer connections with the children and the custodial parent. See Middleton v. Middleton, 227 Va. 82, 314 S.E.2d 362 (1984).[9] The father in Middleton attacked the mother's moral conduct for acts in the other jurisdiction, as Monopoli apparently has done in this case. The Virginia Supreme Court observed that surely the witnesses to support and refute such charges were in the other jurisdiction, not Virginia.
Under the circumstances of this case Virginia not being the home state; Virginia lacking significant connections with the children; no substantial evidence existing in Virginia concerning the children in that state; no emergency jurisdiction or absence of another state with jurisdictionthe Florida courts, (like the Virginia courts), have ruled they lack jurisdiction to make custody determinations.[10] Even if the Virginia courts had emergency jurisdiction, this does not give them subject matter jurisdiction to modify a custody decree of another state.[11] Under such circumstances, Florida courts have also refused to recognize and defer to a custody *353 decree entered by another state. That should have happened here, since the record establishes no basis for subject matter jurisdiction in Virginia. See Quinones v. Quinones, 569 So.2d 884 (Fla. 3d DCA 1990); In re Adoption of C.L.W, 467 So.2d 1106 (Fla. 2d DCA 1985); Meyers v. Meyers, 430 So.2d 500 (Fla. 3d DCA 1983).
From this record it appears that Chaddick made an appearance in the Virginia proceedings and raised the question of subject matter jurisdiction of the Virginia court to act under these circumstances, citing both the UCCJA and the PKPA. The Virginia judge ruled against Chaddick. It is not clear, however, whether Chaddick thereafter agreed to accept the jurisdiction of Virginia, or whether she stipulated or entered into some kind of an agreement on jurisdiction that she should be bound by the Virginia courts,[12] or whether Virginia had any other valid basis upon which to exercise custody jurisdiction. Nor does it appear whether Chaddick appealed the Virginia court's ruling on jurisdiction. However, the mere appearance of one parent in a foreign jurisdiction to contest subject matter jurisdiction to modify or enter a custody decree is not res judicata, nor necessarily binding on that parent. See Steward v. Steward, 588 So.2d 692 (Fla. 5th DCA 1991); Middleton; McDougald v. Jenson, 786 F.2d 1465 (11th Cir.), cert. denied, 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986). Further, a decree entered without subject matter jurisdiction is void and that issue can be raised at any time. Chapoteau v. Chapoteau, 659 So.2d 1381 (Fla. 3d DCA 1995); Gonzalez v. Gonzalez, 654 So.2d 257 (Fla. 3d DCA 1995); Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991). Cf. Plummer v. Hoover, 519 So.2d 1158 (Fla. 5th DCA 1988); International Harvester Co. v. Mann, 460 So.2d 580 (Fla. 1st DCA 1984); Dimino v. Farina, 572 So.2d 552 (Fla. 4th DCA 1990); Kennedy v. Reed, 533 So.2d 1200 (Fla. 2d DCA 1988).
Both Florida and Virginia have adopted the UCCJA, and have welcomed and embraced the purposes and goals of that uniform statute.[13] One of those goals is to prevent the kind of child snatching behavior (here retention of children after visitation) which Monopoli has apparently engaged in, in this case. The Supreme Court of Virginia said about such behavior in Middleton:
Additionally, we cannot overlook the `child snatching' aspect of the case in order to be consistent with the general purposes of the UCCJA. While the father did not `snatch' the children in the true sense of the word, he engaged in an equivalent act by refusing to return them in violation of a visitation agreement; he procured a tactical advantage by his conduct. If we approve the retention of jurisdiction by the trial court, it will tend to encourage such conduct in the future, contrary to one of the principal purposes of the UCCJA. (emphasis supplied)
Middleton, 314 S.E.2d at 369.
The Virginia Supreme Court ruled in Middleton that the trial court abused its discretion in assuming jurisdiction to modify custody under those circumstances, even though Virginia had been the jurisdiction that rendered the initial custody decree, and the father still resided there, so technically, Virginia had continuing jurisdiction to modify in that instance.
In a similar case in Florida, Barnes v. Ostrander, 450 So.2d 1253 (Fla. 2d DCA 1984), the court ruled that Florida did not have jurisdiction to modify the custody decree of a sister state (Michigan). After the parties divorced in Michigan and the mother was awarded primary custody, the mother and child moved to Illinois and the father moved to Florida. After a summer visitation to Florida with the father, the father retained custody of the child and refused to return her to the mother. In affirming the trial court's dismissal of the father's petition to modify the Michigan custody decree, the court said the trial judge need not even hold a hearing, because the father had acted in violation of the Michigan decree. It cited section 61.1318(2) as having been designed to *354 discourage child snatching and forum shopping. See also Brown v. Tan, 395 So.2d 1249 (Fla. 3d DCA 1981).
At this juncture, we should be deciding whether the Florida court acted properly in dismissing Chaddick's petition for enforcement of the Massachusetts decree. The trial judge apparently thought that he had no choice but to dismiss the Florida proceedings once he learned a court in Virginia was exercising jurisdiction. Section 61.1314(1) provides:
A court of this state shall not exercise its jurisdiction under this act if, at the time the petition is filed, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceedings is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
The key language in this statute which the trial court in this case overlooked is "exercising jurisdiction substantially in conformity with this act...."
All indications in this case point to the fact that Virginia was not exercising jurisdiction in substantial conformity with the UCCJA. Florida was the children's home state, and the state which had all significant connection to these children for the three years immediately preceding this controversy. The only connection the children had with Virginia was a one or two month summer visitation with their father in Virginia. Florida clearly has jurisdiction to modify or make an initial custody award under the UCCJA, and PKPA in this case. The fact that the children were being detained in Virginia after a summer vacation, and a court in Virginia assumed jurisdiction to modify a custody decree concerning these children and these parties, is not the end of the matter.
As the Virginia Supreme Court declared in Middleton (regarding the Lyons' custody dispute), merely because another jurisdiction commences a custody proceeding prior to Virginia's does not mandate a "wooden application" of the UCCJA's simultaneous proceedings statute (Virginia's provision of the UCCJA identical to section 61.1314).
Regarding the Lyons, one parent had spirited the child out of its home state, Virginia, and immediately filed custody proceedings in a foreign jurisdiction (England), which the court treated as another state for purposes of the UCCJA. The Middleton court held that Virginia should assume jurisdiction, despite that prior proceeding:
Given the facts of this case, a contrary view would encourage a race to the courthouse, the prize of custody being awarded to their swifter and more devious parent. We will not endorse such conduct in view of at least two important purposes of the UCCJA applicable here: to deter unilateral removal of children to obtain foreign custody awards, and to assure that litigation over the child's custody occurs in the forum where the child and his family have the closest connections. As the father points out, the child had no conceivable connection with England on April 30 except for his forced physical presence there. The child was an American citizen, had lived all of his life in Virginia, was attending school in Virginia, and had formed all his personal relationships in the Commonwealth. His present and future custody should be decided in Virginia.
Middleton, 314 S.E.2d at 371.
I submit that the proper resolution of this case would be to reverse the trial court's order of dismissal and remand for the purpose of developing a sufficient record to demonstrate a basis for the exercise of subject matter jurisdiction by Virginia, or some ground for estopping Chaddick from raising lack of subject matter jurisdiction or binding her by the rulings of the Virginia court.[14] Not to do so rewards an apparent child-snatcher, and gives him the tactical advantage. Why, in the future, should a custodial parent allow a child to go to a different state for visitation, if that means the noncustodial parent can retain the child and empower that *355 other state to modify another state's custody decree, simply because the child has been retained, wrongfully, in the other state? The true basis for the UCCJA's jurisdictional requirements was to prevent and discourage such behavior.[15] I submit that in this case, that policy has been subverted.
DAUKSCH and GRIFFIN, JJ., concur.
NOTES
[1] We note that Chaddick should have sought review by way of plenary appeal from the final order of dismissal, see Fla. R.App. P. 9.030(b)(1)(A), and opt to treat her request for certiorari as a timely filed notice of appeal. See Fla. R.App. P. 9.040(c).
[2] See §§ 61.1302-61.1348, Fla. Stat. (1993).
[1] The Uniform Child Custody Jurisdiction Act, §§ 61.1302-61.1348, Florida Statutes (1993).
[2] See Siegel v. Siegel, 575 So.2d 1267, 1270 (Fla. 1991):

The decision of the court below does not conclude that the Florida trial court should not have held a hearing in order to determine if the New York Family Court was exercising jurisdiction substantially in conformity with the act.
See also Rosso v. Farnell, 581 So.2d 989 (Fla. 2d DCA 1991) (Florida trial court should make a determination based on copies of pleadings filed in other court, transcripts, etc., to determine which was the more appropriate forum.); Newcomb v. Newcomb, 507 So.2d 1145 (Fla. 3d DCA 1987) (Florida has jurisdiction as a child's home state to determine whether another state is exercising jurisdiction substantially in conformity with the UCCJA).
[3] Even if Virginia had subject matter jurisdiction, which it did not, it should have declined to exercise it under these circumstances. See § 61.1318(2), which provides:

61.1318 Jurisdiction declined by reason of conduct.
(1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
(2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment or physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.
(3) In appropriate cases, a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses.
[4] The Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A.
[5] § 61.1308, Fla. Stat. (1993).
[6] See Barnes v. Barnes, 1995 WL 143098 (Va.Ct. App.1995).
[7] § 61.1308(b), Fla. Stat. (1993).
[8] See Farley v. Farley, 9 Va.App. 326, 387 S.E.2d 794 (1990); Mubarak v. Mubarak, 14 Va.App. 616, 420 S.E.2d 225 (1992).
[9] Middleton involved two separate international child custody disputes; one dispute involved the Middleton family and the other involved the Lyons family. The cases were consolidated for purposes of Virginia's UCCJA.
[10] See Gonzalez v. Gonzalez, 654 So.2d 257 (Fla. 3d DCA 1995); Alvarez v. Alvarez, 566 So.2d 516 (Fla. 3d DCA 1990); Bretti v. MacDonald, 501 So.2d 168 (Fla. 3d DCA 1987); Meyers v. Meyers, 430 So.2d 500 (Fla. 3d DCA 1983); Brown v. Tan, 395 So.2d 1249 (Fla. 3d DCA 1981).
[11] Sommer v. Sommer, 508 So.2d 773 (Fla. 5th DCA 1987); Nussbaumer v. Nussbaumer, 442 So.2d 1094 (Fla. 5th DCA 1983).
[12] See Siegel v. Siegel, 575 So.2d 1267 (Fla. 1991); Roby v. Nelson, 562 So.2d 375 (Fla. 4th DCA 1990).
[13] See Middleton v. Middleton, 227 Va. 82, 314 S.E.2d 362 (1984); Yurgel v. Yurgel, 572 So.2d 1327 (Fla.1990).
[14] Siegel v. Siegel, 575 So.2d 1267 (Fla.1991); Roby v. Nelson, 562 So.2d 375 (Fla. 4th DCA 1990).
[15] Bendle, Blakely & Parker, Contemporary Family Law, Vol. 4, §§ 40:02; 40.09.