714 So.2d 1007 (1998)
Karen CHADDICK, etc., Petitioner,
v.
Joseph MONOPOLI, Respondent.
No. 88648.
Supreme Court of Florida.
June 12, 1998.
Donald P. Sluder, Ocoee, for Petitioner.
No appearance for Respondent.
OVERTON, Justice.
We have for review Chaddick v. Monopoli, 677 So.2d 347 (Fla. 5th DCA 1996), based on express and direct conflict with Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. This case concerns the "communication" between a Florida judge and a judge of another state who both have the same family law *1008 cause before them. It also involves the issue of whether an evidentiary hearing is required to determine whether a sister state, which is exercising jurisdiction in a child custody proceeding filed before the Florida proceeding was filed, is acting in substantial conformity with the Uniform Child Custody Jurisdiction Act (UCCJA) so as to preclude Florida from exercising jurisdiction in the case. For the reasons expressed, we conclude that the necessity for holding an evidentiary hearing to make such a determination is a discretionary decision for the trial judge. We do hold prospectively, however, that, even if a trial judge determines that an evidentiary hearing is unnecessary, (1) the parties must be given an opportunity to be present during any conversation the Florida judge has with a judge of a sister state, and (2) the trial judge must set forth specific findings regarding the basis for concluding that jurisdiction in the sister state is or is not appropriate. Under the circumstances before us, where the petitioner fully participated in the proceedings in the sister state, we find that the trial judge properly dismissed the Florida proceeding. Accordingly, we disapprove the opinions in Chaddick and Walt to the extent they are inconsistent with this opinion, but we approve the result of the district court's decision in this case.
The facts of this case are as follows. Petitioner, Karen Chaddick, and respondent, Joseph Monopoli, divorced in Massachusetts in 1988, and Chaddick was awarded custody of their two minor children by a Massachusetts court. Subsequently, Chaddick and the children moved to Florida, and Monopoli moved to Virginia. Under the terms of the Massachusetts decree, Monopoli was entitled to summer visitation with the children.
In July 1993, Chaddick sent the children from Florida to Virginia for visitation during July and August. On August 10, 1993, Monopoli filed a custody petition in Virginia alleging, in part, that: (1) Chaddick had custody of the children pursuant to an order of the court of Massachusetts; (2) Monopoli had had visitation with the children for the three weeks prior to the filing of the petition; (3) Monopoli was to return the children to Florida on August 6, 1993, by airplane; (4) United Airlines had refused to allow the children to travel without Chaddick's address in Florida; (5) Chaddick had refused and continued to refuse to provide her address to Monopoli or to the Charlottesville police; and (6) Chaddick was pregnant and living with a man to whom she was not married. A custody order was entered in Virginia that same month awarding custody to Monopoli.
After that action was filed, Chaddick retained a Virginia attorney to represent her to contest the Virginia court's jurisdiction to hear Monopoli's custody petition. In her memorandum of law contesting jurisdiction, she asserted that, under the UCCJA and the Federal Parental Kidnapping Prevention Act (FPKPA), Virginia did not have jurisdiction over this matter. Apparently, subsequent proceedings ensued in Virginia and the Virginia court ruled against Chaddick in March 1995. While the full record of the Virginia proceeding is not before us, Chaddick asserted in her petition for a writ of certiorari before the district court that she "cooperated and fully participated in the court proceedings in Virginia in an attempt to rectify the injustice which has occurred, but all efforts in that jurisdiction have failed, in that the Virginia tribunal has failed to make determinations and exercise jurisdiction in accordance with [the UCCJA and FPKPA]."
In April 1995, which was almost two years after the Virginia proceeding was initiated, Chaddick filed a petition in Florida seeking enforcement of the Massachusetts decree. The Florida trial judge, following a telephone call to the Virginia court in which he "communicated" with the Virginia judge, dismissed the petition. The Florida judge made a note of that communication, which is part of the record in this proceeding. The Florida trial judge stated in his order of dismissal that he had discussed the case with the Virginia judge and that the Virginia judge "has heard all of the matters raised by petitioner, Karen Chaddick, as late as March 3, 1995, and she ruled against the petitioner on them." The trial judge also determined that he did not have jurisdiction of this case under the UCCJA and must defer to Virginia.
On appeal, a divided Fifth District Court of Appeal affirmed, in an en banc opinion, concluding *1009 that "[t]he record affirmatively shows the Florida trial court acted in conformity with the dictates and objectives of the UCCJA in finding that the Virginia court properly assumed jurisdiction and considered the issues Chaddick wishes to raise in Florida." Chaddick, 677 So.2d at 348.
The UCCJA was first promulgated by the National Commissioners on Uniform State Laws in 1968.[1]See Anne B. Goldstein, The Tragedy of the Interstate Child: A Critical Reexamination of the Uniform Child Custody Jurisdiction Act and Parental Kidnapping Prevention Act, 25 U.C. Davis L.Rev. 845, 847 n. 1 (1992). Since that time, all fifty states, the District of Columbia, and the Virgin Islands have adopted the UCCJA. See 9 U.L.A. at 117-118 (1997 Supp.)(Table of Jurisdictions). Florida adopted the UCCJA in 1977,[2] and Virginia followed suit in 1979.[3]
The UCCJA sets out nine purposes consistent with its overall policy of bringing order to interstate custody disputes.[4] 9 U.L.A. 123-24. As indicated by those purposes, the UCCJA attempts, in part, to avoid relitigation of custody decisions of other states in this state. See Brigitte M. Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand. L.Rev. 1207 (1969).[5] In giving effect to the purpose of the UCCJA, under section 61.1314, a Florida court must defer to a court in another state in a custody dispute if, at the time a petition was filed in Florida, a similar proceeding was pending in a court of another state exercising jurisdiction in substantial conformity with the UCCJA. That section provides as follows:
(1) A court of this state shall not exercise its jurisdiction under this act if, at the time the petition is filed, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
(2) Before hearing the petition in a custody proceeding, the court shall examine the pleadings and other information supplied by the parties under s. 61.132 and shall consult the child custody registry established under s. 61.1334 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state, it shall direct an inquiry to the state court administrator or *1010 other appropriate official of the other state.
(3) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending, to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with ss. 61.134-61.1346. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state, it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.
(Emphasis added.)
Under section 61.1314(3), a Florida trial judge must, upon learning that a proceeding concerning the custody of a child was pending in another state before the Florida court assumed jurisdiction, "stay the proceeding and communicate with the court in which the other proceeding is pending." This mandated communication is for the purpose of avoiding jurisdictional conflicts. See Stock v. Stock, 677 So.2d 1341 (Fla. 4th DCA 1996). As noted by the court in Stock,
Section 61.1314 has been described as "the very essence of" the UCCJA because when it is strictly complied with, jurisdictional conflicts are resolved and conflicting orders prevented. [Burch v. Burch, 424 So.2d 187, 189 (Fla. 4th DCA 1983).] The duty of the trial court to communicate with courts of other jurisdictions where custody proceedings are pending is a key ingredient to effectuating the intent of the UCCJA because effective communication between the jurisdictions should lead to the dispute being resolved in the most appropriate forum. Burch. Only if the courts cannot agree on the most appropriate forum does the priority-of-filing principle enunciated in subsection 61.1314(1) require that the dispute be litigated in the first court to exercise jurisdiction substantially in conformity with the UCCJA. [Siegel v. Siegel, 575 So.2d 1267, 1271 (Fla.1991)].
677 So.2d at 1346. Similarly, under section 61.1316, a court having jurisdiction under the UCCJA may decline to exercise its jurisdiction if it finds that it is an inconvenient forum to make a custody determination under the circumstances of a case and that a court of another state is a more appropriate forum. § 61.1316(1), Fla. Stat. (1997). Before making such a decision, a court "may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court, with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties." § 61.1316(4).
Under these principles, the trial judge in this case did exactly what was required of him by initiating contact with the Virginia court to determine the status of the Virginia litigation, to determine whether Florida was the appropriate forum for resolving this custody issue, and to determine whether a forum was available to the parties to resolve the issue of custody. According to Chaddick, however, the trial court erred in conducting the telephone call to the Virginia court out of her presence and off the record and in failing to conduct a full evidentiary hearing as to whether the Virginia court exercised its jurisdiction substantially in conformity with the UCCJA, as required by the First District Court of Appeal's decision in Walt v. Walt, 574 So.2d 205 (Fla. 1st DCA 1991).
By asking Florida to enforce the Massachusetts judgment, Chaddick is clearly seeking to have the Florida court overrule the Virginia court's determination of jurisdiction and to reconsider the Virginia court's determination of custody. The very fact that Chaddick filed the Florida action only a month after the Virginia court ruled against her is evidence of Chaddick's seeking a "second bite at the apple." Such conduct is clearly contrary to the basic philosophy of the UCCJA and requires the type of relitigation that the UCCJA was intended to *1011 prevent. As previously stated, one of the purposes of the UCCJA is to avoid relitigation of custody decisions of other states in this state. The UCCJA clearly was not designed to give litigants a second avenue for seeking review of an adverse decision by a trial court of another state in which all parties participated. As noted by Judge Harris in his specially concurring opinion in the district court's decision in this case:
Appellant has had her day in court on her issue of jurisdiction and, perhaps in the Virginia appeal process, is still having it. It is not our function as Florida courts, trial or appellate, to review the decisions of the trial courts of our sister states which decide issues voluntarily submitted to them by citizens of our state.
Of course this matter involves a custody dispute properly covered by the Uniform Child Custody Jurisdiction Act. The father, who had the children in Virginia by virtue of his summer visitation, filed his action in the Virginia court to change custody. In his petition (among other allegations), he alleged that he was unable to redeliver custody to the mother because she had moved and refused to give him or the police her new address. The mother appeared in these proceedings and therefore personal jurisdiction over her is not an issue.
For whatever reason, the trial court gave custody to the father. The record of that proceeding is not before us. It may well be before the Virginia Court of Appeal. What is before us is the mother's admission in her petition:
[Chaddick] has cooperated and fully participated in the Court proceedings in Virginia in an attempt to rectify the injustice which has occurred, but all efforts in that jurisdiction have failed....
It appears that petitioner challenged the factual findings that convinced Judge Jannene Shannon of the Virginia Juvenile and Domestic Relations District Court to assume jurisdiction. In her Memorandum of Law filed with the Virginia trial court, the petitioner stated:
The determinations which must be made under both the state and federal law are factual. Petitioner submits that there was not a situation at that time which would have permitted the court to exercise "emergency" jurisdiction over the children under either statute.
....
If the mother wished to challenge the authority of the Virginia courts to hear this issue without submitting herself to the jurisdiction of the Virginia courts, she should have filed her petition to domesticate and enforce the Massachusetts judgment in Florida. Then the assigned judges, pursuant to the UCCJA, would determine which state should proceed. Indeed that is a primary function of the UCCJA. In our case, the mother did not come to the Florida courts until the Virginia court had not only, with her full participation, ruled on the issue of jurisdiction but also had awarded custody of the children to the father. This was too late.
....
... Having lost this issue in a forum in which she voluntarily appeared, Judge Baker was correct in not giving her a second bite of the apple.
Chaddick, 677 So.2d at 349-350. We fully agree with this analysis. As indicated by Chaddick's petition to the district court in this case, she "fully participated" in the Virginia proceeding. Chaddick appears to be asking this Court to require an evidentiary hearing regarding the telephone conversation between the Florida judge and the Virginia judge in which they discussed the status of the Virginia case and Virginia's jurisdiction. Apparently, Chaddick's request would allow her to question the Virginia judge and place that judge in the untenable position of having to be a witness to explain the basis of her determination that the Virginia court had properly exercised jurisdiction.
In Siegel v. Siegel, 575 So.2d 1267, 1271 (Fla.1991), we recognized the discretionary authority of a trial court to hold a hearing to determine whether the foreign court assumed jurisdiction substantially in conformity *1012 with the UCCJA.[6] We did not state, however, that such a hearing was mandatory. Similarly, in Billingsley v. Billingsley, 704 So.2d 545, 546 (Fla. 5th DCA 1997), the Fifth District Court of Appeal recognized that a determination as to whether a court of a sister state is exercising its jurisdiction in substantial conformity with the UCCJA can be conducted without an evidentiary hearing if the court can determine from the pleadings before it and from a conference with the judge of the sister state that in fact such sister state is acting in conformity with the act.[7]
The First District's opinion in Walt does require that an evidentiary hearing be conducted to determine whether a sister court exercised its jurisdiction in substantial conformity with the UCCJA. However, the court in Walt was considering this issue under section 61.1328, which involves the enforcement of an out-of-state decree. The enforcement of the Virginia decree is not at issue here. To clarify this issue, however, we hold that the determination of whether an evidentiary hearing must be conducted regarding the issue of another state's appropriate exercise of jurisdiction is within the discretion of the trial judge, depending upon the facts of the particular case before the court. Consequently, we disapprove Walt to the extent it is inconsistent with our finding here.
In this case, the father lived in Virginia; the children were with him for summer visitation; and he alleged that the mother would not cooperate in providing information to enable him to return the children to Florida. The mother contested jurisdiction and fully participated in the Virginia proceeding. Then, one month after an adverse decision by the Virginia court, she filed the instant petition. Under these circumstances, we conclude that the trial judge properly dismissed Chaddick's petition. As noted by the district court, under the best interests doctrine, the Virginia court could have properly assumed jurisdiction pursuant to section 61.1308(1)(b)1 under these facts.
We do believe that in the future parties should be given an opportunity to be present when a Florida judge and the judge of a sister state communicate[8] or that a record of that conversation must be made. See, e.g., Burkhalter v. Burkhalter, 634 So.2d 761 (Fla. 1st DCA 1994) (jurisdiction relinquished to require trial court to supplement the record regarding content of conversation with North Carolina judge). As noted by the First District Court of Appeal in Hickey v. Baxter, 461 So.2d 1364, 1370 (Fla. 1st DCA 1984), the record on appeal must be sufficient to allow the appellate court to properly review the trial judge's decision of whether the sister state exercised its jurisdiction "substantially in conformity" with UCCJA. This does not mean, however, that the parties may examine the judge of the sister state; the communication is to be strictly between the judges for the purpose of determining the status of the case in the sister state and to examine the basis for jurisdiction in that state.
In summary, we conclude that the trial judge appropriately dismissed Chaddick's petition under the circumstances of this case. To ensure that future cases are not jeopardized by an inadequate record on this issue, we hold, prospectively, that: (1) the parties must be given the opportunity to be present during a Florida judge's conversation with a judge of a sister court but the parties may not participate in that conversation; and (2) the Florida judge must explicitly set forth in the record the reasons for the judge's finding that the sister state was or was not exercising its jurisdiction in substantial conformity with UCCJA.
*1013 Accordingly, we disapprove Walt and those parts of the district court's opinion in this case that are inconsistent with this opinion but we approve the result of the district court's decision in this case.
It is so ordered.
SHAW, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., dissents with an opinion, in which KOGAN, C.J., concurs.
ANSTEAD, Justice, dissenting.
I fully agree with the dissent of Judge Sharp, and especially her observations as to the consequences of the majority's holding:
[T]he proper resolution of this case would be to reverse the trial court's order of dismissal and remand for the purpose of developing a sufficient record to demonstrate a basis for the exercise of subject matter jurisdiction by Virginia, or some ground for estopping Chaddick from raising lack of subject matter jurisdiction or binding her by the rulings of the Virginia court. Not to do so rewards an apparent child-snatcher, and gives him the tactical advantage. Why, in the future, should a custodial parent allow a child to go to a different state for visitation, if that means the noncustodial parent can retain the child and empower that other state to modify another state's custody decree, simply because the child has been retained, wrongfully, in the other state? The true basis for the UCCJA's jurisdictional requirements was to prevent and discourage such behavior.
Chaddick, 677 So.2d at 354-55 (Sharp, J., dissenting) (footnote omitted).[9] It is interesting that the majority relates and relies on "the facts of the case" in great detail in an opinion in which the majority approves the denial of an evidentiary hearing and a trial court order based entirely upon secret consultation with a foreign judge.
The primary goal of the UCCJA is to bring order to intra-state custody disputes and alleviate the "intolerable state of affairs where self-help and the rule of `seize-and-run' prevail rather than the orderly processes of the law." 9 U.L.A. 117 Prefatory Note.[10] In giving effect to these important public policies, Florida courts must defer to courts in other states in custody disputes if those courts are exercising jurisdiction in "substantial conformity" with the UCCJA. See § 61.1314(1), Fla. Stat. (1993);[11]see, e.g., *1014 Hanson v. Hanson, 379 So.2d 967, 968 (Fla. 1st DCA 1979) (finding trial court erred in exercising jurisdiction when Illinois court was exercising jurisdiction in same child custody dispute substantially in conformity with UCCJA). However, when the parties disagree on jurisdiction, a jurisdictional inquiry by the trial court must be rigorous in order to ensure that the most appropriate jurisdiction supervises the custody relationship in accord with the public policies of the uniform act.[12] Here, as Judge Sharp pointedly notes in her dissent below, "not to do so rewards an apparent child-snatcher, and gives him the tactical advantage." That is the result that the majority endorses today.
Petitioner Karen Chaddick and respondent Joseph Monopoli divorced in Massachusetts in 1988, and Chaddick was awarded custody of their two minor children. In 1991, Chaddick and the children moved to Florida and became Florida residents. Monopoli eventually made his residence in Virginia. Under the terms of the Massachusetts decree, Monopoli was entitled to summer visitation with the children and Chaddick sent the children from Florida to Virginia for visitation during July and August, 1993. However, Monopoli refused to return the children and filed a petition in Virginia to obtain custody. Chaddick appeared in the Virginia court and challenged Virginia's exercise of jurisdiction. The Virginia court rejected the challenge and granted Monopoli custody of the children. Chaddick then filed a petition in Florida seeking enforcement of the Massachusetts decree. The Florida court, based upon a confidential telephone call to the Virginia court, dismissed the petition. On appeal, the Fifth District affirmed, in an en banc opinion, and concluded that Chaddick was not entitled to a hearing and was precluded from challenging the Virginia court's jurisdiction because she had participated in the Virginia proceeding.[13]

HEARING REQUIREMENTS
At issue today is whether the Florida trial court acted properly in summarily dismissing this action after a secret consultation with the Virginia judge, or whether the trial court was required to conduct a hearing to determine if Florida should exercise jurisdiction or if the Virginia court was properly exercising jurisdiction so as to preclude Florida, under the policies of the uniform act, from exercising jurisdiction.
*1015 We expressly recognized in Siegel v. Siegel, 575 So.2d 1267 (Fla.1991), the authority of trial courts to hold a hearing to determine whether the foreign court assumed jurisdiction substantially in conformity with the UCCJA. 575 So.2d at 1271. The First District in Walt v. Walt, 574 So.2d 205, 210 (Fla. 1st DCA 1991), applied Siegel, in holding that the trial court was "required to hear evidence and determine whether the foreign court jurisdiction was exercised in accordance with the UCCJA." Walt held that the trial court erred in finding the foreign court had exercised jurisdiction in substantial compliance with the UCCJA. Id., 574 So.2d at 214. Judge Zehmer, writing for the Court, explained:
The Mississippi court decree did not expressly address the legal effect of the child's residence with his mother in Florida and absence from Mississippi when the suit was filed, and why it was in the best interest of the child for the Mississippi court to assume jurisdiction. Nor did the Mississippi court appear to consider whether a Florida court might more appropriately assume jurisdiction under the UCCJA to determine custody because it would be in the best interest of the child in view of the child's physical residence in Florida and his prior contacts with the state.
Id. Although the First District recognized the Mississippi court's concurrent jurisdiction, the court found that the Mississippi court's failure to specifically address the legal import of the child's connections to Florida was not in accordance with the UCCJA. Id.
Similarly, in McCabe v. McCabe, 600 So.2d 1181 (Fla. 5th DCA 1992), and Flores v. Saunders, 674 So.2d 767 (Fla. 5th DCA 1996), the Fifth District has recognized that hearings may be required if section 61.1308(1)(b), Florida Statutes (1991), is invoked as a basis for jurisdiction. Furthermore, under those decisions, the trial court must make findings of fact related to the issues of whether the child and at least one parent have a significant connection to the state and whether substantial evidence concerning the past and future care, protection, training, and personal relationships is available. As noted above, if there appears to be a basis for a Florida court to assume jurisdiction, that court has an obligation to determine the jurisdictional issue, including the issue of whether another state is a more appropriate forum under the UCCJA. Consequently, if it is determined that another state is exercising its jurisdiction substantially in conformity with the UCCJA, a petitioner in Florida will not be permitted to avoid the other state's appropriate exercise of jurisdiction. See Mondy v. Mondy, 428 So.2d 235, 238 (Fla.1983); Flores, 674 So.2d at 770.
However, the Fifth District has also held that while a trial court may hold a hearing to determine if another state is exercising jurisdiction in substantial conformity with the UCCJA, "such determination may also be made without an evidentiary hearing if the court can determine from the pleadings before it and a conference with the judge of the sister state that in fact such sister state is acting in conformity with the act." Billingsley v. Billingsley, 704 So.2d 545, 547 (Fla. 5th DCA 1997). In fact, this is the way the Fifth District in Billingsley characterized its holding in Chaddick. Interestingly, in Billingsley, the district court noted that the trial court found an evidentiary hearing appropriate and, based upon that hearing, properly determined that North Carolina was not exercising its jurisdiction in the child custody dispute in substantial conformity with the UCCJA. Id., 704 So.2d at 547. Hence, parties contesting jurisdiction and similarly situated were afforded an evidentiary hearing in Billingsley but not in Chaddick. Today, we approve these obviously conflicting outcomes.
Importantly, there are undisputed facts contained in the record of this case which would ordinarily indicate Florida would be the proper forum for resolution of the custody dispute at issue. First, Chaddick and the minor children have continuously resided in Florida since 1991, indicating, under the definition provided in section 61.1308(1)(a)2, Florida Statutes (1993), that Florida has become the children's home state. Florida also has subject matter jurisdiction over children based on their significant connection to Florida as residents and the existence of substantial *1016 evidence concerning the children's past and future welfare in Florida. § 61.1308(1)(b)1, 2, Fla. Stat. (1993). These unchallenged jurisdictional "facts" would ordinarily require a Florida trial court, before declining jurisdiction over the custody dispute, to carefully determine whether another state acted properly in assuming jurisdiction under the uniform act. As noted by Judge Sharp, even Virginia law appears to support Florida jurisdiction under these circumstances.[14]
On the limited record before us, it appears that this case was brought when Monopoli, in violation of the Massachusetts custody agreement, refused to return the children to their lawful primary custodian. Thereafter, a trial court in Virginia determined the resulting custody dispute even though Florida is the home state of the children, the state in which the children and their mother have continuously resided for several years. It is also apparent that the Florida trial judge's private telephone communication with the Virginia trial judge determined his dismissal of Chaddick's petition to enforce the Massachusetts decree. However, the parties were not privy to the conversation and no record was made of its contents for review. In essence, Mrs. Chaddick has been punished for attempting to convince the foreign court that it was not the appropriate forum to decide this dispute. Presumably, under the majority opinion she should have ignored the Virginia courts and rushed right into court in Florida. Her decision not to do so has proven fatal.
This case vividly demonstrates the value of and need for a hearing. The district court's opinion states that the trial judge's dismissal of the petition was based upon an implicit finding that Virginia had properly exercised jurisdiction. Chaddick, 677 So.2d at 348. The opinion speculates that the Virginia court could possibly have exercised jurisdiction under the "Best Interest Doctrine" upon a finding that the children and one parent had a significant connection to Virginia.[15] 677 So.2d at 348. However, as noted by Judge Sharp in her dissenting opinion, with which I agree, the record should be sufficient to affirmatively demonstrate whether the out-of-state court acted in substantial conformity with the UCCJA. Id. at 350 (Sharp, J., dissenting). That determination should not be left to speculation. As expressed by the First District in Burkhalter v. Burkhalter, 634 So.2d 761, 763 (Fla. 1st DCA 1994), the record before an appellate court should contain all the information and evidence considered by the trial judge, hence the need for a hearing and a record thereof, including a record of any communications with the foreign court.[16]
Under these circumstances, I would hold that it was error for the trial court to determine the jurisdictional dispute without a hearing and findings based thereon. I agree with the dissent of Judge Sharp that this is *1017 the only appropriate way to ensure that courts are actually deciding custody disputes in substantial conformity with the UCCJA, and also for there to be meaningful appellate review of a trial court's determination of this important issue. I cannot agree that the decision to conduct a hearing on such an important issue should be a discretionary call. If there is a legitimate dispute, there must be a fair hearing in which the parties have an opportunity to be heard and to present evidence concerning the jurisdictional issue in dispute.
By approving Virginia's exercise of jurisdiction on this sparse record, we are subverting the important policies underlying the UCCJA. As Judge Sharp concludes, to hold this way appears to encourage unilateral removal of children to foreign jurisdictions, encourage disputing parents to race each other to the courthouse, and allow a custody determination in a forum with little, if any, connection to the child.[17]Id. Whatever happened to due process?[18]
KOGAN, C.J., concurs.
NOTES
[1] Uniform Child Custody Jurisdiction Act, 9 U.L.A. 123 (1988).
[2] See ch. 77-433, § 1, Laws of Fla. Florida has codified the UCCJA in sections 61.1302-61.1348, Florida Statutes (1997).
[3] See 1979 Va. Acts ch. 229; Va.Code Ann. §§ 20-125 to 20-146 (Michie 1995).
[4] Florida's enactment tracks the UCCJA's purposes almost word for word:

The general purposes of this act are to:
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of the child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.
(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible.
(7) Facilitate the enforcement of custody decrees of other states.
(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.
(9) Make uniform the law with respect to the subject of this act among states enacting it.
§ 61.1304, Fla. Stat. (1993).
[5] Bodenheimer was the Reporter for the Special Committee of the Commissioners on Uniform State Laws that prepared the UCCJA.
[6] In Siegel, we disapproved the district court's opinion to extent it could be read to hold "that a Florida trial court cannot hold a hearing to determine whether another state is exercising jurisdiction substantially in conformity with the UCCJA." 575 So.2d at 1271. However, we also expressly found that the trial judge in that case should not have exercised jurisdiction in the custody dispute or the dissolution proceeding under circumstances where, similar to the facts in this case, the wife had participated in the New York proceeding.
[7] In Billingsley, the challenging parent had not participated in the North Carolina proceeding.
[8] The parties, of course, could be present by telephone.
[9] The dissent also explains that even Virginia law requires that the custody dispute be resolved in Florida. See Middleton v. Middleton, 227 Va. 82, 314 S.E.2d 362 (1984).
[10] See Ch. 77-433, § 1, Laws of Fla. Florida has codified the UCCJA in sections 61.1302-61.1348, Florida Statutes (1997). Florida's enactment tracks the UCCJA's purpose almost word for word:

The general purposes of this act are to:
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of the child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.
(6) Avoid relitigation of custody decisions of other states in this case insofar as feasible.
(7) Facilitate the enforcement of custody decrees of other states.
(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.
(9) Make uniform the law with respect to the subject of this act among states enacting it.
§ 61.1304, Fla. Stat. (1993).
[11] The section provides in part that:

(1) A court of this state shall not exercise its jurisdiction under this act if, at the time the petition is filed, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
[12] Under the UCCJA, a state may assume jurisdiction if:

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state:
1. Is the home state of the child at the time of commencement of the proceeding, or
2. Had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
(b) It is in the best interest of the child that a court of this state assume jurisdiction because:
1. The child and his parents, or the child and at least one contestant, have a significant connection with this state, and
2. There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(c) the child is physically present in this state and:
1. The child has been abandoned, or
2. It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
(d)1. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), paragraph (b), or paragraph (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
2. It is in the best interest of the child that a court of this state assume jurisdiction.
§ 61.1308, Fla. Stat. (1993); see also Flores v. Saunders, 674 So.2d 767, 769-70 (Fla. 5th DCA 1996). In some instances, more than one state will have jurisdiction pursuant to the UCCJA. Siegel v. Siegel, 575 So.2d 1267, 1269 (Fla.1991).
[13] The record reflects that Chaddick appeared before the Virginia court and claimed the Virginia court lacked subject matter jurisdiction. The record does not reflect the extent of Chaddick's participation. See Chaddick, 677 So.2d at 353 (W. Sharp, J., dissenting).
[14] See supra note 9.
[15] Even accepting the district court's speculation, it appears on this limited record that Monopoli may not have satisfied the "Best Interest Doctrine" because the statute requires a significant connection and a showing that substantial evidence concerning the children's past and future well-being is available in that jurisdiction. See § 61.1308(1)(b), Fla. Stat. (1993) (emphasis added).
[16] An important part of the problem here is the fact that there is no record of the trial court's communication with the Virginia court. Of course, the uniform act encourages communications between courts, and I support that policy. However, if it appears that those communications may play a factual role in resolving the jurisdictional issue, the parties must be permitted access to this factual information and an opportunity to challenge it. The First District held in Burkhalter that a trial court may properly communicate with a foreign court but must include the contents of any communications with another state's court on the record for the benefit of the parties and a reviewing court. I note that this problem may be addressed by statute in the near future with the replacement of the UCCJA by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). See Linda D. Elrod and Robert G. Spector, A Review of the Year in Family Law: Of Welfare Reform, Child Support, and Relocation, 30 Fam. L.Q. 765, 771 (1997). Unlike the UCCJA, the UCCJEA provides that if an "inter-court communication touches on the substantive rights of the parties, the parties should be able to participate." Id. at 771. Such a provision will obviously enhance the quality of the process by which jurisdiction is determined, protect the rights of all interested parties, and allow for a comprehensive record for subsequent appellate review.
[17] For all the record shows, the summer 1993 visitation may have been the children's first and only contact with Virginia. The record does not reflect any previous visitations, and it appears that during the State of Florida's earlier attempt to enforce child support obligations, Monopoli could not be located. 677 So.2d at 351 (Sharp, J., dissenting).
[18] Unfortunately, it appears that Florida mothers having custody of their children need not look to Florida courts for a hearing if their out-of-state spouses decide to unlawfully retain possession of the children during out-of-state visitation.. The "good old days" may be here again when possession is nine-tenths of the law and a friendly local court can do anything it wants.